## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03678

DAVID BACA, DUSTIN MACKINTOSH,
RONALD BRENT DENNY, and DAVID
MCCAMISH,

      Plaintiffs,

v.

CITY OF NORTHGLENN, COLORADO;
JAMES MAY, JR., Northglenn Chief of Police,
sued in his official capacity; HEATHER
GEYER, Northglenn City Manager, sued in
her official capacity; and AMANDA
PETERSON, Northglenn Director of Parks,
Recreation, and Culture, sued in her official
capacity;

      Defendants.

---

### DEFENDANTS' ANSWER, DEFENSES AND AFFIRMATIVE DEFENSES,
### AND JURY DEMAND

---

Defendants City of Northglenn, Colorado, James May, Jr., Heather Geyer, and Amanda

Peterson, by and through their respective counsel of record, O'HAGAN MEYER PLLC, and pursuant

to Fed. R. Civ. P. 12, respectfully submit their Answer, Defenses and Affirmative Defenses, and

Jury Demand, to Defendants' Complaint as follows:

### RESPONSE TO "INTRODUCTION"

1.    This is a civil rights action brought under 42 U.S.C. § 1983 challenging the City of

Northglenn's enactment and enforcement of City Resolution 54 ("CR-54"), which prohibits groups

of five or more people from using public park pavilions and outdoor spaces on a recurring basis.

CR-54 is facially unconstitutional; it is a breathtakingly broad prohibition that would make

#10845965v1

criminals of families holding weekly picnics, Scout troops meeting monthly, running clubs gathering on Saturdays, book clubs convening in pavilions, or coworkers sharing lunch every Thursday. The ordinance leaves critical terms undefined, vesting unbounded discretion in enforcement officials to decide what "monopolizes" a facility, what "impedes" access, and when recurring use becomes criminal—all without any objective standards, procedural safeguards, or meaningful limitations.

**RESPONSE TO ALLEGATION NO. 1:**

With respect to Paragraph 1 of Plaintiffs' Complaint, asserts that the allegations set forth in the Complaint are contained within the express provisions of that Pleading. Defendants further assert that the requirements of CR-54 are contained within the express provisions of that resolution; to the extent that Plaintiffs' description of the requirements vary from the resolution, are incomplete, or are otherwise taken out of context, Defendants deny the same. Defendants deny the remaining allegations contained in Paragraph 1 of the Complaint.

2.      Plaintiffs, along with other members of their respective churches, and as a sincere expression of their religious faith and a form of protected speech and assembly, have gathered weekly at E.B. Rains Jr. Memorial Park to share meals, prayer, Bible study, and Christian fellowship with members of the Northglenn community, including members of the homeless community. These acts are religious exercises central to their faith.

**RESPONSE TO ALLEGATION NO. 2:**

With respect to the allegations set forth in Paragraph 2, Defendants admit, upon information and belief, that Plaintiffs have gathered at E.B. Rains Jr. Memorial Park (the "Park") regularly to provide lunch to the unhoused community. Defendants are without sufficient

#10845965v1

knowledge and information to form a belief as to the remaining allegations in Paragraph 2 of the Complaint and, on that basis, deny the same.

3.     The events leading up to June 2025 show that CR-54 was not enacted for neutral reasons—it was enacted to specifically prohibit Plaintiffs' religious gatherings. After the City's Chief of Police announced he was "tasked with shutting down the weekly gatherings," the City enacted CR-54 in June 2025 and has enforced it exclusively against Plaintiffs' religious gatherings while permitting numerous comparable secular groups to use the park without interference.

**RESPONSE TO ALLEGATION NO. 3**:

Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4.     The City's actions violate the Free Exercise Clause, Free Speech Clause, and Equal Protection Clause of the First and Fourteenth Amendments to the United States Constitution, as well as parallel provisions of the Colorado Constitution. CR-54 is facially invalid as an impermissibly vague enactment and an overbroad restriction on fundamental rights. As applied, it violates the Constitution through religious targeting, viewpoint discrimination, and selective enforcement that cannot survive any level of constitutional scrutiny.

**RESPONSE TO ALLEGATION NO. 4**:

Defendants deny the allegations contained in Paragraph 4 of the Complaint.

## RESPONSE TO "PARTIES"

5.     Plaintiff David Baca is an adult resident of Colorado and a pastor at The Crossing Church located in Westminster, Colorado. Since 2020, he has participated in and helped lead weekly ministry gatherings in E.B. Rains Jr. Memorial Park ("Park") to minister and serve weekly meals to the local homeless population in accordance with his sincerely held religious beliefs. Pastor Baca's right to gather in the Park is prohibited by the City's enactment and enforcement of

#10845965v1

CR-54.

**RESPONSE TO ALLEGATION NO. 5**:

With respect to the allegations contained in Paragraph 5 of the Complaint, Defendants admit that Plaintiff Baca participated in some weekly lunches for the unhoused population at the E.B. Rains Jr. Memorial Park ("Park") since 2020. Defendants further assert that the allegations related to Plaintiff Baca's conduct with respect to CR-54 call for a legal conclusion, to which no response is required. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 5 of the Complaint and, on that basis, deny the same.

6.      Plaintiff Dustin Mackintosh is an adult resident of Colorado and the lead pastor at Next Step Christian Church located in Thornton, Colorado. Since March 2021, he has participated in and helped lead weekly ministry gatherings serving homeless individuals in the Park. Pastor Mackintosh was cited on September 18, 2025, for violating park rules following the City's enactment of CR-54.

**RESPONSE TO ALLEGATION NO. 6**:

With respect to the allegations contained in Paragraph 6 of the Complaint, Defendants admit that Plaintiff Mackintosh participated in some weekly lunches for the unhoused population at the Park, and was cited on September 18, 2025. Defendants further assert that the terms of the citation are set forth in the express provisions of that document; to the extent that Plaintiffs' description of the terms differ from the citation, are incomplete, or are taken out of context, Defendants deny the same. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 6 of the Complaint and, on that basis, deny the same.

#10845965v1

7.    Plaintiff Ronald Brent Denny ("Brent Denny") is an active member of Brave Church at its Westminster, Colorado, campus, volunteering and meeting on a recurring basis in the Park to minister and serve weekly meals to the local homeless population in accordance with his sincerely held religious beliefs. Mr. Denny was cited on September 18, 2025, for violating park rules following the City's enactment of CR-54.

**RESPONSE TO ALLEGATION NO. 7**:

With respect to the allegations contained in Paragraph 7 of the Complaint, Defendants admit that Plaintiff Denny participated in some weekly lunches for the unhoused population at the Park, and was cited on September 18, 2025. Defendants further assert that the terms of the citation are set forth in the express provisions of that document; to the extent that Plaintiffs' description of the terms differ from the citation, are incomplete, or are taken out of context, Defendants deny the same. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 5 of the Complaint and, on that basis, deny the same.

8.    Plaintiff David McCamish is an active member of Brave Church at its Westminster, Colorado, campus, volunteering and meeting on a recurring basis in the Park to minister and serve weekly meals to the local homeless population in accordance with his sincerely held religious beliefs. Mr. McCamish was cited on September 18, 2025, for violating park rules following the City's enactment of CR-54.

**RESPONSE TO ALLEGATION NO. 8**:

With respect to the allegations contained in Paragraph 8 of the Complaint, Defendants admit that Plaintiff McCamish participated in some weekly lunches for the unhoused population at the Park, and was cited on September 18, 2025. Defendants further assert that the terms of the citation are set forth in the express provisions of that document; to the extent that Plaintiffs'

#10845965v1

description of the terms differ from the citation, are incomplete, or are taken out of context, Defendants deny the same. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 5 of the Complaint and, on that basis, deny the same.

9.      Defendant, City of Northglenn ("City"), is a Colorado municipal corporation located in Adams County, Colorado, and organized under the laws of Colorado. The City of Northglenn, by and through its City Council, enacts all city legislation, including CR-54, and is responsible for its enforcement.

**RESPONSE TO ALLEGATION NO. 9**:

Defendants admit the allegations contained in Paragraph 9 of the Complaint.

10.      Defendant James May, Jr., is the Northglenn Police Department's Chief of Police. As Chief of Police, Defendant May exercises command over all police department personnel. The Northglenn Police Department, under the command of Defendant May, is responsible for enforcing the Northglenn City Code and at all relevant times operated as a subdivision of Northglenn. This Defendant is sued in his official capacity.

**RESPONSE TO ALLEGATION NO. 10**:

Defendants admit the allegations contained in Paragraph 10 of the Complaint.

11.      Defendant Heather Geyer is Northglenn's City Manager. As City Manager, Defendant Geyer is the city's chief administrative officer responsible for directing the operations of all city departments (including the police department) and enforcing all laws and ordinances passed by the Northglenn City Council. The office of the City Manager at all relevant times operated as a subdivision of Northglenn. This Defendant is sued in her official capacity.

**RESPONSE TO ALLEGATION NO. 11**:

6

Defendants admit the allegations contained in Paragraph 11 of the Complaint.

12.     Defendant Amanda Peterson is the Northglenn Director of Parks, Recreation, and Culture. Defendant Peterson runs the Department of Parks, Recreation, and Culture and at all relevant times operated as a subdivision of Northglenn. This Defendant is sued in her official capacity.

**RESPONSE TO ALLEGATION NO. 12**:

Defendants admit the allegations contained in Paragraph 12 of the Complaint.

## **RESPONSE TO "JURISDICTION AND VENUE"**

13.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, enforceable under the Civil Rights Act, 42 U.S.C. § 1983, *et seq.*

**RESPONSE TO ALLEGATION NO. 13**:

With respect to the allegations contained in Paragraph 13 of the Complaint, Defendants assert that the allegations set forth in the Complaint are contained within the express provisions of that pleading. Defendants deny all allegations of wrongful acts or omissions, including all allegations of unconstitutional conduct, resulting in any damages to Plaintiffs.

14.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

**RESPONSE TO ALLEGATION NO. 14**:

With respect to the allegations contained in Paragraph 14 of the Complaint, Defendants admit that this Court has original jurisdiction over Plaintiffs' federal claims. Defendants deny all allegations of wrongful acts or omissions, including all allegations of unconstitutional conduct, resulting in any damages to Plaintiffs.

#10845965v1

15.    This Court's supplemental jurisdiction over Plaintiffs' claims under the Colorado Constitution and state law is proper pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts.

**RESPONSE TO ALLEGATION NO. 15**:

With respect to the allegations contained in Paragraph 15 of the Complaint, Defendants admit that this Court has supplemental jurisdiction over Plaintiffs' state law claims. Defendants deny all allegations of wrongful acts or omissions, including all allegations of unconstitutional conduct, resulting in any damages to Plaintiffs.

16.    This Court has the authority to award the requested damages pursuant to 28 U.S.C.§ 1343; the requested declaratory relief under 28 U.S.C. §§ 2201-2202; the requested injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

**RESPONSE TO ALLEGATION NO. 16**:

The allegations contained in Paragraph 16 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions set forth in 28 U.S.C.§ 1343, 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1343, Fed. R. Civ. P. 65, and 42 U.S.C. § 1988 are contained within the express provisions of those statutes and rule. To the extent that Plaintiffs' description of the terms of those statutes and rule differ from the statutes and rule, are incomplete, or are otherwise taken out of context, Defendants deny the same. Defendants deny all allegations of wrongful acts or omissions, including all allegations of unconstitutional conduct, resulting in any damages to Plaintiffs.

17.    Under 28 U.S.C. § 1391, venue is proper in this district because the events described herein occurred in this district and/or Defendants reside in this district.

#10845965v1

**RESPONSE TO ALLEGATION NO. 17**:

With respect to the allegations contained in Paragraph 17 of the Complaint, Defendants admit that venue is proper. Defendants deny all allegations of wrongful acts or omissions, including all allegations of unconstitutional conduct, resulting in any damages to Plaintiffs.

<u>**RESPONSE TO "FACTUAL BACKGROUND"**</u>

18.    The Park is a 28-acre public park located in, maintained, and operated by the City of Northglenn, Colorado.

**RESPONSE TO ALLEGATION NO. 18**:

Defendants admit the allegations contained in Paragraph 18 of the Complaint.

19.    The Park is a traditional public forum, open to the public.

**RESPONSE TO ALLEGATION NO. 19**:

With respect to the allegations contained in Paragraph 19, Defendants admit that the Park is open to the public, subject to the Park's rules and regulations. The remaining allegations call for a legal conclusion, to which no response is required.

20.    The Park's eight pavilions combined are designed for over 400 people to use simultaneously.

**RESPONSE TO ALLEGATION NO. 20**:

With respect to the allegations contained in Paragraph 20 of the Complaint, Defendants admit that the Park's pavilions could have a capacity of up to 400 people, depending on the use.

21.    The Park has six pavilions that can individually seat up to 50 people per pavilion, along with two larger pavilions that can individually seat up to 72 people.

**RESPONSE TO ALLEGATION NO. 21**:

#10845965v1

With respect to the allegations contained in Paragraph 21 of the Complaint, Defendants admit that six pavilions at the Park have a capacity of up to 50 people per pavilion, and that two pavilions have a capacity of up to 72, depending on the use. Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22.    Prior to June 9, 2025, park pavilions were open on a first-come, first-served basis if the pavilion was not already reserved. If a pavilion was reserved, reservations were posted at the specific pavilion to put other groups on notice.

**RESPONSE TO ALLEGATION NO. 22**:

With respect to the allegations contained in Paragraph 22 of the Complaint, Defendants admit that use of the pavilions were governed by the Park's rules and regulations, which speak for themselves. To the extent that Plaintiffs' description of the rules and regulations differ from the rules and regulations, are incomplete, or are taken out of context, Defendants deny the same.

23.    In addition to the pavilions, the Park has numerous picnic tables and benches for families and members of the community to gather.

**RESPONSE TO ALLEGATION NO. 23:**

With respect to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that the Park has picnic tables and benches, the use of which are governed by the Park's rules and regulations, which speak for themselves. To the extent that Plaintiffs' description of the rules and regulations differ from the rules and regulations, are incomplete, or are taken out of context, Defendants deny the same.

24.    Many community members and groups use the Park and its facilities for various activities and gatherings.

**RESPONSE TO ALLEGATION NO. 24**:

#10845965v1

Defendants admit the allegations contained in Paragraph 24 of the Complaint.

25.     Pastor Baca and Crossing Church began ministering and serving the local homeless community in or around July 2020.

**RESPONSE TO ALLEGATION NO. 25**:

With respect to the allegations in Paragraph 25 of the Complaint, Defendants admit that Plaintiff Baca began providing lunch to various members of the unhoused population at the Park in or around July 2020. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 25 of the Complaint and, on that basis, deny the same.

26.     Over the next five years, Pastor Baca was joined at the Park by another pastor and volunteers from two other local churches, including Pastor Mackintosh from Next Step Church, along with Brent Denny and David McCamish from Brave Church, to serve and minister to the local community, including members of the local homeless population.

**RESPONSE TO ALLEGATION NO. 26**:

With respect to the allegations contained in Paragraph 26 of the Complaint, Defendants admit that at some point, Plaintiffs Mackintosh, Denny, and McCamish joined Plaintiff Baca in the provision of lunch to various members of the unhoused population at the Park. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 26 of the Complaint and, on that basis, deny the same.

27.     Plaintiffs and other members and volunteers from their respective churches have regularly gathered in the Park on Tuesdays and Thursdays from 12:00 pm to 1:00 pm to share meals, prayer, Bible study, and Christian fellowship.

**RESPONSE TO ALLEGATION NO. 27**:

#10845965v1

With respect to the allegations contained in Paragraph 27 of the Complaint, Defendants admit that Plaintiffs and others regularly gathered in the Park at least twice a week to provide lunch to various members of the unhoused population, and that such gatherings lasted at least two hours. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 27 of the Complaint and, on that basis, deny the same.

28.     On Tuesdays, in addition to providing meals for the local community, the gathering typically consists of a sermon followed by a prayer circle.

**RESPONSE TO ALLEGATION NO. 28**:

With respect to the allegations contained in Paragraph 28 of the Complaint, Defendants assert that one of the unhoused attendees of the luncheon would give a "sermon." Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 28 of the Complaint and, on that basis, deny the same.

29.     On Thursdays, in addition to providing meals for the local community, the gathering typically consists of worship music, prayer, and a Bible study.

**RESPONSE TO ALLEGATION NO. 29**:

With respect to the allegations contained in Paragraph 29 of the Complaint, Defendants assert that one of the unhoused attendees of the luncheon would give a "sermon." Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 29 of the Complaint and, on that basis, deny the same.

30.     Plaintiffs sincerely believe feeding, serving, and ministering to the local community, including the homeless community, is a religious exercise central to their faith. These activities are compelled by their religious beliefs and are expressions of their faith.

**RESPONSE TO ALLEGATION NO. 30**:

#10845965v1

Defendants are without sufficient knowledge and information to form a belief as to the allegations contained in Paragraph 30 of the Complaint and, on that basis, deny the same.

31.    Tuesday meals are typically provided by Pastor Baca's Crossing Church. Pastor Mackintosh's Next Step Church and volunteers from Brave Church rotate providing meals every other Thursday. Regardless of which group provides the meals, members from all three churches attend each Tuesday and Thursday gathering.

**RESPONSE TO ALLEGATION NO. 31**:

Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 31 of the Complaint and, on that basis, deny the same.

32.    The Tuesday gatherings typically draw around 30 to 40 people, while the Thursday gatherings draw only around 20 people—complying with the capacity restrictions for any pavilion on each day.

**RESPONSE TO ALLEGATION NO. 32**:

With respect to the allegations contained in Paragraph 32 of the Complaint, Defendants admit that the lunch gatherings typically draw 30 to 40 people, if not more, and that such gatherings monopolize the entirety of the pavilions.

33.    From around July 2020 to the summer of 2024, a period of over four years, Plaintiffs and other volunteers from their respective churches conducted the weekly gatherings without incident or objection from city officials.

**RESPONSE TO ALLEGATION NO. 33**:

Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.    The churches used one of the Park's many pavilions that were offered on a first-

#10845965v1

come, first-served basis, consistent with the Park's previous general policies.

**RESPONSE TO ALLEGATION NO. 34**:

With respect to the allegations set forth in Paragraph 34 of the Complaint, Defendants admit that the lunch gatherings were conducted in the pavilions that were, at the time, offered on a first-come, first-served basis, subject to the requirements of the Park's rules and regulations. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations set forth in Paragraph 34 of the Complaint and, on that basis, denies the same.

35.     The previous park rules did not require permits for this type of gathering.

**RESPONSE TO ALLEGATION NO. 35**:

With respect to the allegations contained in Paragraph 35 of the Complaint, Defendants admit that the requirements of the Park's rules regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

36.     During this four-year period, there were no documented complaints about the ministry gatherings causing disruption, monopolizing park facilities, or interfering with other park users' access.

**RESPONSE TO ALLEGATION NO. 36**:

Defendants deny the allegations contained in Paragraph 36 of the Complaint.

37.     On or around July 2024, by and through various city officials, Northglenn first indicated its opposition to the ministry gatherings.

**RESPONSE TO ALLEGATION NO. 37**:

Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     During one of Plaintiffs' July 2024 gatherings, Defendant Chief of Police James

#10845965v1

May arrived and informed those participating in the gathering that he had been tasked with shutting down Plaintiffs' weekly gatherings.

**RESPONSE TO ALLEGATION NO. 38**:

Defendants deny the allegations contained in Paragraph 38 of the Complaint.

39.     Following Plaintiffs' July 2024 encounter with Defendant May, on August 26, 2024, Defendant May's assistant reached out by email on behalf of Defendant May to set up a private meeting with Plaintiff Pastor Mackintosh "as [his] church has been highlighted as an organizer for lunches being served at E.B. Rains Park."

**RESPONSE TO ALLEGATION NO. 39**:

With respect to the allegations contained in Paragraph 39 of the Complaint, Defendants admit that Defendant May's assistant reached out by email, and that the provisions of that email are contained within the express provisions of that document. To the extent that Plaintiffs' description of the terms of the email differ from the email, are incomplete, or are taken out of context, Defendants deny the same.

40.     Communications between Plaintiffs and Defendant Mays's office culminated in a 1:00 pm private meeting on September 24, 2024, at the Northglenn Police Department.

**RESPONSE TO ALLEGATION NO. 40**:

Defendants admit the allegations contained in Paragraph 40 of the Complaint.

41.     The September 2024 meeting was attended by Pastor Dustin Mackintosh, Pastor David Baca, Deputy Chief of Police Randall Darlin, Director of Parks Amanda Peterson, Northglenn Program Manager Jessica Hulse, and Adams County Deputy Director of Human Services Eddie Valdez.

**RESPONSE TO ALLEGATION NO. 41**:

#10845965v1

With respect to the allegations contained in Paragraph 41 of the Complaint, Defendants admit that Pastor Dustin Mackintosh, Pastor David Baca, Deputy Chief of Police Randall Darlin, Director of Parks Amanda Peterson, Northglenn Program Manager Jessica Hulse, Adams County Deputy Director of Human Services Eddie Valdez, and Jeanne Nelson attended the meeting.

42.    During this meeting, city officials informed the group that they could not continue meeting in the park for the weekly gatherings.

**RESPONSE TO ALLEGATION NO. 42**:

Defendants deny the allegations contained in Paragraph 42 of the Complaint.

43.    The City expressed safety and security concerns, characterizing the homeless community as inherently dangerous and claiming the ministry created a "magnet" for homeless individuals.

**RESPONSE TO ALLEGATION NO. 43**:

With respect to the allegations contained in Paragraph 43 of the Complaint, Defendants admit that at this meeting, they discussed concerns related to safety at the Park arising from the lunch program, and that the lunch program drew large numbers of the unhoused population to the Park, who lingered after the lunch program. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 43 of the Complaint and, on that basis, deny the same.

44.    The City's characterization of homeless individuals as inherently dangerous and its assertion that serving them creates a "magnet" reveals discriminatory intent based on who the ministry serves and the religious motivation for serving them.

**RESPONSE TO ALLEGATION NO. 44**:

Defendants deny the allegations contained in Paragraph 44 of the Complaint.

#10845965v1

45.     City officials went as far as recommending another county building in a completely different city and jurisdiction. This alternative was later determined by Plaintiffs as unfeasible, as Mr. Valdez informed Plaintiffs that they could not use the county building's kitchen or even the electricity.

**RESPONSE TO ALLEGATION NO. 45**:

With respect to the allegations contained in Paragraph 45 of the Complaint, Defendants admit that a nearby public building was identified as an alternative for Plaintiffs' use in Westminster, where two of the three churches Plaintiffs affiliated with were located. Defendants further assert that none of the churches with which Plaintiffs were affiliated, were located in Northglenn. Defendants deny the remaining allegations in Paragraph 45 of the Complaint.

46.     During the September 2024 meeting, Pastors Mackintosh and Baca informed city officials that serving the local homeless population, not only through meals but also by forming human connections with individuals in the community, is central to their faith and religious convictions.

**RESPONSE TO ALLEGATION NO. 46**:

With respect to the allegations contained in Paragraph 46 of the Complaint, Defendants admit that during the meeting, Plaintiffs Mackintosh and Baca discussed that serving the homeless population helped form human connections with individuals in the community. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 46 of the Complaint and, on that basis, deny the same.

47.     During the September 2024 meeting, city officials also claimed that organized use of the park without a permit was not permissible—failing to acknowledge that a permit was never before required. Prior to the enactment of CR-54, the Park pavilions were open on a first-come,

first-served basis if there were no current reservations.

**RESPONSE TO ALLEGATION NO. 47**:

With respect to the allegations contained in Paragraph 47 of the Complaint, Defendants admit that the requirements of the City's rules regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants admit that Plaintiffs Baca and Mackintosh were apprised that organized use of the Park without a permit was precluded by the Park's rules.

48.    City officials cited safety and security concerns, characterizing the homeless community as inherently dangerous and claiming the ministry created a "magnet" for homeless individuals.

**RESPONSE TO ALLEGATION NO. 48**:

With respect to the allegations contained in Paragraph 48 of the Complaint, Defendants admit that at this meeting, they discussed concerns related to safety at the Park arising from the lunch program, and that the lunch program drew large numbers of the unhoused population to the Park, who lingered after the lunch program. Defendants are without sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 48 of the Complaint and, on that basis, deny the same.

49.    City officials also claimed that homeless individuals would linger after events leaving messes, and referenced an assault involving a child by a homeless individual that Plaintiffs later determined happened on a Wednesday—a day that Plaintiffs do not even meet in the Park.

**RESPONSE TO ALLEGATION NO. 49**:

#10845965v1

With respect to the allegations contained in Paragraph 49 of the Complaint, Defendants admit that City officials discussed at this meeting concerns that members of the unhoused population would linger after the lunches, creating safety issues, and referenced several examples of those safety issues, including an assault on a child by a participant in the lunch program.

50.    The September 24, 2024, meeting exclusively involved pastors and church representatives being told their gatherings violated city policy. No other groups using the Park were called in for similar discussions.

**RESPONSE TO ALLEGATION NO. 50**:

With respect to the allegations contained in Paragraph 50 of the Complaint, Defendants admit that the September 24, 2024, meeting was between Northglenn representatives and members of various churches who participated in a lunch program hosted in the Park. Defendants further admit that Northglenn representatives did not meet with other groups, as they voluntarily complied when presented with the Park rules.

51.    This singling out of religious actors demonstrates targeting based on religious identity and exercise.

**RESPONSE TO ALLEGATION NO. 51**:

Defendants deny the allegations contained in Paragraph 51 of the Complaint.

52.    Despite the City's stated opposition, Plaintiffs and the weekly gatherings continued at the Park. Meanwhile, behind the scenes, the City was actively preparing to shut the gatherings down.

**RESPONSE TO ALLEGATION NO. 52**:

With respect to the allegations contained in Paragraph 52 of the Complaint, Defendants admit that the weekly lunch gatherings continued despite the requirements set forth in the Park

#10845965v1

rules. Defendants further admit that during this time, the City was reviewing potential changes to the Parks rules and regulations, which would have affected Plaintiffs' and others' use of the Park. Defendants deny the remaining allegations contained in Paragraph 52 of the Complaint.

53.     On September 30, 2024, Ms. Hulse acknowledged the religious purpose of the meetings in a follow-up email to Pastor Mackintosh, stating, "I think we can all agree on the importance of the intent on the lunches to not only provide a meal, but social connections."

**RESPONSE TO ALLEGATION NO. 53**:

With respect to the allegations contained in Paragraph 53 of the Complaint, Defendants admit that Ms. Hulse sent an email to Plaintiff Mackintosh, and that the statements in that email are contained within the express provisions of that communication. To the extent that Plaintiffs' description of Ms. Hulse's communication to Plaintiff Mackintosh differs from the email, is taken out of context, or is otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations contained in Paragraph 53 of the Complaint.

54.     On April 28, 2025, City staff presented to the City Council proposed amendments to the Public Facilities Standards.

**RESPONSE TO ALLEGATION NO. 54**:

Defendants admit the allegations contained in Paragraph 54 of the Complaint.

55.     On May 8, 2025, the Parks and Recreation Advisory Board approved CR-54, and on June 9, 2025, the Northglenn City Council adopted CR-54, titled "Public Facilities Standards" (A true and accurate copy of CR-54 is attached hereto as Exhibit A).

**RESPONSE TO ALLEGATION NO. 55**:

With respect to the allegations contained in Paragraph 55, Defendants admit that the Parks and Recreation Advisory Board recommended that revisions to the Public Facilities Standards that

#10845965v1

ultimately became CR-54 be presented to City Council for consideration, and that Northglenn City Council approved CR-54, which speaks for itself. Defendants deny the remaining allegations set forth in Paragraph 55 of the Complaint.

56.    Given Plaintiffs' private discussions with city officials, CR-54's Background section makes it abundantly clear that this policy was enacted to target Plaintiffs' use of the Park. Consistent with city officials' goal of shutting down Plaintiffs' weekly gatherings, the "proposed amendments include language that clearly defines '*organized group*,' and differentiates the use of sports fields *from other park spaces*…The proposed amendments would prohibit any group from reserving or dropping-in to utilize *a pavilion* or a park on a recurrent basis." Ex. A at p. 1 (emphasis added).

**RESPONSE TO ALLEGATION NO. 56**:

Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57.    CR-54 provides that group use of the pavilions, outdoor spaces, and athletic fields is generally prohibited without a permit. The issuance of a permit is at the sole discretion of city officials. Ex. A at p. 5.

**RESPONSE TO ALLEGATION NO. 57**:

With respect to the allegations contained in Paragraph 57 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

58.    CR-54 further provides that "pavilions and outdoor spaces other than athletic fields may not be rented or otherwise utilized for group use on a recurrent basis." Ex. A at p. 6. Under CR-54, permit or not, recurrent use is prohibited.

#10845965v1

**RESPONSE TO ALLEGATION NO. 58**:

With respect to the allegations contained in Paragraph 58 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

59.    CR-54 defines "group use" as five or more individuals participating in such group use. *Id.*

**RESPONSE TO ALLEGATION NO. 59**:

With respect to the allegations contained in Paragraph 59 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

60.    "Recurrent" means occurring on more than one occasion in a manner that monopolizes all or part of the facility and impedes open access by others. *Id.*

**RESPONSE TO ALLEGATION NO. 60**:

With respect to the allegations contained in Paragraph 60 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

61.    CR-54 does not define critical terms such as "monopolizes," "impedes," or "open access," leaving enforcement decisions to the subjective discretion of police officers and city officials.

**RESPONSE TO ALLEGATION NO. 61**:

#10845965v1

With respect to the allegations contained in Paragraph 61 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations contained in Paragraph 61 of the Complaint.

62.    The five-person threshold in CR-54 is unreasonably low for a park designed to accommodate hundreds of people simultaneously.

**RESPONSE TO ALLEGATION NO. 62**:

Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63.    CR-54 provides no time frame or any standards to guide city officials in deciding whether to issue a permit.

**RESPONSE TO ALLEGATION NO. 63**:

With respect to the allegations contained in Paragraph 63 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

64.    CR-54 does not provide any mechanism to review the denial of any permits.

**RESPONSE TO ALLEGATION NO. 64**:

With respect to the allegations contained in Paragraph 64 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

65.    Under the plain language of CR-54, the rule would criminalize a family of five or

#10845965v1

more meeting weekly for a picnic, a running club gathering every Saturday, or five coworkers sharing lunch at a pavilion every Thursday.

**RESPONSE TO ALLEGATION NO. 65**:

With respect to the allegations contained in Paragraph 65 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. The remaining allegations call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 65 of the Complaint.

66.    CR-54 permits one-time events of up to 72 people, demonstrating that the ordinance's concern is not with group size or park capacity but with recurring use—specifically, the recurring religious gatherings.

**RESPONSE TO ALLEGATION NO. 66**:

With respect to the allegations contained in Paragraph 66 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations contained in Paragraph 66 of the Complaint.

67.    The stated purpose of CR-54 is to ensure open access to public facilities and prevent monopolization, but its five-person threshold and prohibition on recurring use are not narrowly tailored to achieve these objectives.

**RESPONSE TO ALLEGATION NO. 67**:

With respect to the allegations contained in Paragraph 67 of the Complaint, Defendants

#10845965v1

admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. The remaining allegations call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the same.

68.    On August 21, 2025, Defendant Amanda Peterson, in her official capacity as Director of Parks, informed Pastor Mackintosh by email that Plaintiffs' ongoing use of the pavilions at the Park violates the amended Park rule.

**RESPONSE TO ALLEGATION NO. 68**:

With respect to the allegations contained in Paragraph 68 of the Complaint, Defendants admit that Defendant Peterson emailed Plaintiff Mackintosh, and that the provisions of that email are contained within the express provisions of that document. To the extent that Plaintiffs' description of the terms of the email differ from the email, are incomplete, or are taken out of context, Defendants deny the same.

69.    Pastor Mackintosh responded on August 27, 2025, informing Ms. Peterson of Plaintiffs' concerns with these new rules, including that "many are convicted [sic] that this is a violation of their right to live out their faith in the public space" and emphasizing that these weekly gatherings are not "lunch programs," but are *religious practices*.

**RESPONSE TO ALLEGATION NO. 69**:

With respect to the allegations contained in Paragraph 69 of the Complaint, Defendants admit that Plaintiff Mackintosh responded to Defendant Peterson, and that the provisions of that email are contained within the express provisions of that document. To the extent that Plaintiffs'

#10845965v1

description of the terms of the email differ from the email, are incomplete, or are taken out of context, Defendants deny the same.

70.    Ms. Peterson later responded on September 5, 2025, claiming that the intention behind the rules was to "simply allow the park to be open and available for use by the general public based on the nature of the park, and the desire of the City not to have this space made unavailable to such use by virtue of group use by any group as defined by the park rules." Ms. Peterson would go on to add that the City will enforce the park rules moving forward.

**RESPONSE TO ALLEGATION NO. 70**:

With respect to the allegations contained in Paragraph 70 of the Complaint, Defendants admit that Defendant Peterson emailed Plaintiff Mackintosh, and that the provisions of that email are contained within the express provisions of that document. To the extent that Plaintiffs' description of the terms of the email differ from the email, are incomplete, or are taken out of context, Defendants deny the same.

71.    Less than a week later, on Thursday, September 11, 2025, Northglenn police officers issued a warning to the ministry leaders under CR-54.

**RESPONSE TO ALLEGATION NO. 71**:

With respect to the allegations contained in Paragraph 71 of the Complaint, Defendants admit that during the week encompassing September 11, 2025, Northglenn police officers issued a warning to any persons not in compliance with the City's regulations.

72.    Officers reportedly stated they "did not know how to code it" or "how to cite this thing," demonstrating the lack of clear standards in CR-54 and the officers' confusion about its application.

**RESPONSE TO ALLEGATION NO. 72**:

#10845965v1

Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.    On Thursday, September 18, 2025, Pastor Mackintosh and volunteers Brent Denny and David McCamish were cited for unlawfully violating park rules under Northglenn Municipal Code § 9-10-2 by simply being in the park.

**RESPONSE TO ALLEGATION NO. 73**:

With respect to the allegations contained in Paragraph 73 of the Complaint, Defendants admit that the City issued Plaintiffs Mackintosh, Denny, and McCamish citations, and that the terms of the citation are set forth in the express provisions of that document; to the extent that Plaintiffs' description of the terms differ from the citation, are incomplete, or are taken out of context, Defendants deny the same.

74.    On September 18, 2025, Brent Denny was alone at a nearby pavilion working on his computer. Although he was not participating with the group in any religious activity, illegal or otherwise, officers still proceeded to cite him.

**RESPONSE TO ALLEGATION NO. 74**:

With respect to the allegations contained in Paragraph 74 of the Complaint, Defendants admit that the City issued Plaintiff Denny a citation, and that the terms of the citation are set forth in the express provisions of that document; to the extent that Plaintiffs' description of the terms differ from the citation, are incomplete, or are taken out of context, Defendants deny the same. Defendants deny that Plaintiff Denny was not participating with the rest of the lunch group.

75.    When officers arrived on September 18, they asked the ministry leaders what church they were associated with and how many individuals from each church were present in the park.

**RESPONSE TO ALLEGATION NO. 75**:

#10845965v1

With respect to the allegations contained in Paragraph 75 of the Complaint, Defendants admit that the responding police officers asked questions to determine the affiliation of the lunch program attendees to determine whether there was recurring group usage of the Park.

76.    This explicit inquiry into religious affiliation demonstrates that enforcement decisions were tied to religious identity, not neutral application of group size restrictions.

**RESPONSE TO ALLEGATION NO. 76**:

Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.    Officers requested and recorded which churches the three Plaintiffs were from, despite claiming the interaction concerned only group size.

**RESPONSE TO ALLEGATION NO. 77**:

With respect to the allegations contained in Paragraph 77 of the Complaint, Defendants admit that the responding police officers asked questions to determine the affiliation of the lunch program attendees to determine whether there was recurring group usage of the Park.

78.    If CR-54 were truly about group size and monopolization, the religious affiliation of participants would be irrelevant.

**RESPONSE TO ALLEGATION NO. 78**:

With respect to the allegations contained in Paragraph 78 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny that the religious affiliation of any participants was relevant, outside of any efforts to determine repeat monopolization of the Park.

79.    Upon information and belief, prior to being cited, officers told the men that they

#10845965v1

only wanted to give them a warning, but after speaking back and forth with command over the phone, the officers were instructed to cite the individuals from the churches.

**RESPONSE TO ALLEGATION NO. 79**:

With respect to the allegations contained in Paragraph 79 of the Complaint, Defendants admit that because Plaintiffs were well aware of the Park's rules and regulations, command instructed the officers to cite the individuals running the lunch program at the Park on September 18, 2025.

80.    Upon information and belief, the Northglenn Seniors met at the park twice on August 26, 2025, and twice on August 28, 2025, for group fitness classes, yet were not approached.

**RESPONSE TO ALLEGATION NO. 80**:

With respect to the allegations contained in Paragraph 80 of the Complaint, Defendants admit that the Northglenn Seniors met at the Park twice on August 26, 2025, and on August 28, 2025, as part of a City-sponsored event for an in-house program.

81.    Upon information and belief, on September 1, 2025, an adult day care service was in the park at the same time as Plaintiffs' group and was not cited.

**RESPONSE TO ALLEGATION NO. 81**:

With respect to the allegations contained in Paragraph 81 of the Complaint, Defendants admit that the City did not cite any adult day service group on September 1, 2025, as there was no observable violation of the City's regulations. Defendants are without sufficient knowledge and information to form a belief as to the veracity of the remaining allegations contained in Paragraph 81 of the Complaint and, on that basis, deny the same.

82.    On the same day Plaintiffs were cited—September 18, 2025—an adult day services group was present in the Park at the same time but was not cited.

#10845965v1

**RESPONSE TO ALLEGATION NO. 82**:

With respect to the allegations contained in Paragraph 82 of the Complaint, Defendants admit that the City did not cite any adult day service group on September 18, 2025, as there was no observable violation of the City's regulations. Defendants are without sufficient knowledge and information and belief as to the veracity of the remaining allegations contained in Paragraph 82 of the Complaint and, on that basis, deny the same.

83.     Under CR-54's plain language, all Northglenn Seniors classes after their initial class would constitute as recurrent group use violating CR-54, yet on information and belief, they were not cited or approached.

**RESPONSE TO ALLEGATION NO. 83**:

Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84.     On September 23, 2025, Ron, a member of the homeless community and frequent preacher at the ministry gatherings, also received a citation.

**RESPONSE TO ALLEGATION NO. 84**:

With respect to the allegations contained in Paragraph 84 of the Complaint, Defendants admit that Ron, a member of the homeless community that frequently ran and/or participated in the lunch program, received a citation.

85.     On September 23, 2025, officers made the group disperse and go home, leaving prepared food behind that was accordingly damaged or destroyed, and preventing them from completing their ministry activities that day.

**RESPONSE TO ALLEGATION NO. 85**:

With respect to the allegations contained in Paragraph 85 of the Complaint, Defendants admit that officers instructed the members of the lunch group to disperse. Defendants are without

#10845965v1

sufficient knowledge and information to form a belief as to the remaining allegations contained in Paragraph 85 of the Complaint and, on that basis, deny the same.

86.    No group other than the religious ministry is known to have received citations under CR-54.

**RESPONSE TO ALLEGATION NO. 86**:

With respect to the allegations contained in Paragraph 86 of the Complaint, Defendants admit that other groups, both secular and non-secular, have not received citations, as they have not refused to comply with the Park's regulations.

87.    The selective enforcement against the religious ministry, while numerous other groups continue to use the Park freely, demonstrates that the City's actions are directed at religious exercise itself.

**RESPONSE TO ALLEGATION NO. 87**:

Defendants deny the allegations contained in Paragraph 87 of the Complaint.

88.    On September 22, 2025, Plaintiff Pastor Mackintosh spoke at a City Council meeting regarding CR-54. The City Council members provided no substantive response.

**RESPONSE TO ALLEGATION NO. 88**:

Defendants admit the allegations contained in Paragraph 88 of the Complaint.

89.    Following the citations, city officials invited Plaintiffs to meet privately yet again to discuss Plaintiffs' continued concerns with CR-54.

**RESPONSE TO ALLEGATION NO. 89**:

With respect to the allegations contained in Paragraph 89 of the Complaint, Defendants admit that Defendant Geyer sent an email to Plaintiff Denny, and that the statements in that email are contained within the express provisions of that communication. To the extent that Plaintiffs' description of Ms. Geyer's communication to Plaintiff Denny differs from the email, is taken out

#10845965v1

of context, or is otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations contained in Paragraph 89 of the Complaint.

90.    This meeting was on October 1, 2025, attended by Pastor Mackintosh, Pastor Baca, and Brent Denny. City officials attending the meeting included Defendant City Manager Heather Geyer, Defendant Chief of Police James May, and Defendant Director of Parks Amanda Peterson.

**RESPONSE TO ALLEGATION NO. 90**:

Defendants admit the allegations contained in Paragraph 90 of the Complaint.

91.    During the October 1 meeting, Brent and the pastors reiterated their concerns with CR-54. Despite the City's actions leading up to October 1, city officials still claimed that this rule was not aimed at Plaintiffs.

**RESPONSE TO ALLEGATION NO. 91**:

With respect to the allegations contained in Paragraph 91 of the Complaint, Defendants admit that Plaintiffs relayed their concerns about CR-54, and that the City properly noted that the rule was not aimed at Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 91 of the Complaint.

92.    Nonetheless, on information and belief, no other group had been called in to discuss this rule nor given a citation.

**RESPONSE TO ALLEGATION NO. 92**:

With respect to the allegations contained in Paragraph 92 of the Complaint, Defendants admit that the City has not met with other groups, as other groups have not refused to comply with the City's regulations.

93.    On October 12, 2025, Mr. Denny notified city officials by email that CR-54 could pose significant legal risk to the City.

#10845965v1

**RESPONSE TO ALLEGATION NO. 93**:

With respect to the allegations contained in Paragraph 93 of the Complaint, Defendants admit that Plaintiff Denny sent an email to Mayor Leighty and Defendant Geyer, and that the statements in that email are contained within the express provisions of that communication. To the extent that Plaintiffs' description of Plaintiff Denny's communication to Mayor Leighty and Defendant Geyer differs from the email, is taken out of context, or is otherwise incomplete, Defendants deny the same

94.    Plaintiffs reiterated that serving homeless individuals is an act of religious expression central to their faith.

**RESPONSE TO ALLEGATION NO. 94**:

With respect to the allegations contained in Paragraph 94 of the Complaint, Defendants admit that Plaintiff Denny sent an email to Mayor Leighty and Defendant Geyer, and that the statements in that email are contained within the express provisions of that communication. To the extent that Plaintiffs' description of Plaintiff Denny's communication to Mayor Leighty and Defendant Geyer differs from the email, is taken out of context, or is otherwise incomplete, Defendants deny the same

95.    On October 13, 2025, Pastor Mackintosh attended the City Council's meeting and spoke to councilmembers regarding Plaintiffs' concerns with CR-54.

**RESPONSE TO ALLEGATION NO. 95**:

Defendants admit the allegations contained in Paragraph 95 of the Complaint.

96.    The City has since paused enforcement of CR-54's recurrent use provision regarding the issuance of citations.

**RESPONSE TO ALLEGATION NO. 96**:

#10845965v1

Defendants admit the allegations contained in Paragraph 96 of the Complaint.

97.    The City scheduled a special Council meeting for November 17, 2025, to discuss possible amendments to CR-54.

**RESPONSE TO ALLEGATION NO. 97**:

Defendants admit the allegations contained in Paragraph 97 of the Complaint.

98.    Despite pausing enforcement, the City has refused to dismiss the three September 18, 2025, citations issued to Pastor Mackintosh, Brent Denny, and David McCamish.

**RESPONSE TO ALLEGATION NO. 98**:

Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.    The City stated it would continue the cases until after the November 17, 2025, discussion.

**RESPONSE TO ALLEGATION NO. 99**:

Defendants admit the allegations contained in Paragraph 99 of the Complaint.

100.    The citations against Plaintiffs remain pending and active.

**RESPONSE TO ALLEGATION NO. 100**:

Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.    The City continues to "monitor and observe" Plaintiffs' recurrent use at the Park until determining its next steps.

**RESPONSE TO ALLEGATION NO. 101**:

With respect to the allegations contained in Paragraph 101, Defendants admit that the City monitors and observes all park usage. Defendants deny the remaining allegations contained in Paragraph 101 of the Complaint.

102.    Plaintiffs remain subject to prosecution under the pending citations and are chilled

#10845965v1

from exercising their constitutional rights to religious exercise, free speech, and assembly.

**RESPONSE TO ALLEGATION NO. 102**:

Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.    The citation proceedings for Pastor Mackintosh, Brent Denny, and David McCamish are stayed until December 18, 2025.

**RESPONSE TO ALLEGATION NO. 103**:

Defendants deny the allegations contained in Paragraph 103 of the Complaint.

104.    The threat of prosecution, combined with the City's continued monitoring, creates an ongoing chilling effect on Plaintiffs' constitutional rights.

**RESPONSE TO ALLEGATION NO. 104**:

Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.    Plaintiffs face imminent harm: they are subject to pending criminal citations, ongoing monitoring by city officials, and the threat of future enforcement if they continue their religious gatherings.

**RESPONSE TO ALLEGATION NO. 105**:

Defendants deny the allegations contained in Paragraph 105 of the Complaint.

### RESPONSE TO "CAUSES OF ACTION"

**Response to "Count I"**
**Facial Violation of Plaintiffs'**
**First Amendment Right to Freedom of Speech - Overbreadth**
**(U.S. Const. amend. I; 42 U.S.C. 1983)**

106.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 106**:

#10845965v1

With respect to the allegations set forth in Paragraph 106 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

107.    Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under the color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

**RESPONSE TO ALLEGATION NO. 107**:

Defendants deny the allegations set forth in Paragraph 107 of the Complaint.

108.    The Park is a traditional public forum; as a public forum, the Park is open to everyone for general use and serves as a venue for public expression.

**RESPONSE TO ALLEGATION NO. 108**:

The allegations contained in Paragraph 108 call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the Park is open to the public, subject to the requirements set forth in the rules and regulations governing the public's use of the Park.

109.    Defendants' CR-54 is not narrowly tailored to serve a significant government interest and does not leave open ample alternative channels of communication for Plaintiffs.

**RESPONSE TO ALLEGATION NO. 109**:

The allegations contained in Paragraph 109 call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110.    First, CR-54 is not narrowly tailored. The five-person threshold is dramatically under-inclusive relative to the park's capacity.

**RESPONSE TO ALLEGATION NO. 110**:

#10845965v1

The allegations contained in Paragraph 110 call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants deny the allegations set forth in Paragraph 110 of the Complaint.

111.    The prohibition on recurrence is both over- and under-inclusive: it bans small, harmless recurring gatherings, while permitting large one-time events that create far greater temporary monopolization.

**RESPONSE TO ALLEGATION NO. 111**:

The allegations contained in Paragraph 111 call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112.    CR-54's five-person threshold is extraordinarily low and bears no rational relationship to any legitimate governmental interest in a park designed to accommodate hundreds of people simultaneously.

**RESPONSE TO ALLEGATION NO. 112**:

The allegations contained in Paragraph 112 call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants deny the allegations contained in Paragraph 112 of the Complaint.

113.    The Park has multiple large pavilions seating up to 72 people, smaller pavilions seating 40-50 people, and numerous picnic tables and benches throughout.

**RESPONSE TO ALLEGATION NO. 113**:

With respect to the allegations contained in Paragraph 113 of the Complaint, Defendants admit that six pavilions at the Park have a capacity of up to 50 people per pavilion, that two

#10845965v1

pavilions have a capacity of up to 72, depending on the use, and that the Park has other picnic tables and benches throughout.

114.    The Park can accommodate 600 or more people at once.

**RESPONSE TO ALLEGATION NO. 114**:

With respect to the allegations contained in Paragraph 114, Defendants admit that, depending on the use, the Park can accommodate up to 600 people.

115.    A group of five people cannot "monopolize" facilities designed for hundreds.

**RESPONSE TO ALLEGATION NO. 115**:

Defendants deny the allegations set forth in Paragraph 115 of the Complaint

116.    By setting the threshold at five people, CR-54 criminalizes the vast majority of group activities in public parks, including activities that present no conceivable threat to park access or any other legitimate governmental interest.

**RESPONSE TO ALLEGATION NO. 116**:

Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117.    The threshold applies without regard to the size of the facility being used, the availability of alternative seating, the time of day, actual demand for park facilities, or any other factor related to the City's asserted interest in preventing monopolization.

**RESPONSE TO ALLEGATION NO. 117**:

With respect to the allegations set forth in Paragraph 117 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 117 of the Complaint.

#10845965v1

118.    CR-54 prohibits use "on more than one occasion"—meaning that the second time any group of five or more people gathers at the park, they have violated the ordinance.

**RESPONSE TO ALLEGATION NO. 118**:

With respect to the allegations set forth in Paragraph 118 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 118 of the Complaint.

119.    The qualifying language—"in a manner that monopolizes all or part of the facility and impedes open access by others"—provides no meaningful limitation because these terms are undefined and inherently subjective.

**RESPONSE TO ALLEGATION NO. 119**:

With respect to the allegations set forth in Paragraph 119 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 119 of the Complaint.

120.    A family holding a weekly picnic at a 50-person pavilion has no way to know whether this "monopolizes" the facility when 40 other seats remain available.

**RESPONSE TO ALLEGATION NO. 120**:

Defendants deny the allegations set forth in Paragraph 120 of the Complaint.

121.    The ordinance provides no answers as to whether occupying any space or using the same pavilion twice monopolizes it.

#10845965v1

**RESPONSE TO ALLEGATION NO. 121**:

With respect to the allegations set forth in Paragraph 121 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 121 of the Complaint.

122.    Even assuming the City has a legitimate interest in preventing actual monopolization of park facilities, the universe of conduct that CR-54 prohibits vastly exceeds any conduct the City could constitutionally regulate.

**RESPONSE TO ALLEGATION NO. 122**:

With respect to the allegations set forth in Paragraph 122 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 122 of the Complaint.

123.    The ratio of protected to unprotected speech swept up by CR-54 is overwhelming. For every gathering that might arguably monopolize facilities, hundreds or thousands of harmless gatherings are also prohibited.

**RESPONSE TO ALLEGATION NO. 123**:

With respect to the allegations set forth in Paragraph 123 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations,

#10845965v1

are taken out of context, or are otherwise incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 123 of the Complaint.

124.    Defendants' enactment of this facially overbroad ordinance has caused and will continue to cause Plaintiffs and countless others irreparable injury for which there is no adequate remedy at law.

**RESPONSE TO ALLEGATION NO. 124**:

Defendants deny the allegations set forth in Paragraph 124 of the Complaint.

125.    Pursuant to 42 U.S.C §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, injunctive and declaratory relief, and reasonable costs of this lawsuit, including reasonable attorneys' fees.

**RESPONSE TO ALLEGATION NO. 125**:

Defendants deny the allegations set forth in Paragraph 125 of the Complaint.

**Response to "Count II"**
**Facial Violation of Plaintiffs' First Amendment**
**Right to Freedom of Speech - Vagueness**
**(U.S. Const. amend. I; 42 U.S.C. 1983)**

126.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 126**:

With respect to the allegations set forth in Paragraph 126 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

127.    Pursuant to 42 U.S.C § 1983, Plaintiffs bring this claim against Defendants for acting under the color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

**RESPONSE TO ALLEGATION NO. 127**:

#10845965v1

Defendants deny the allegations set forth in Paragraph 127 of the Complaint.

128.     The First Amendment imposes heightened vagueness requirements when a statute regulates speech or expressive conduct.

**RESPONSE TO ALLEGATION NO. 128**:

The allegations contained in Paragraph 128 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

129.     Vague laws offend the Constitution because they fail to give fair notice, chill protected speech through uncertainty, and vest enforcement officials with standardless discretion that invites discriminatory enforcement.

**RESPONSE TO ALLEGATION NO. 129**:

The allegations contained in Paragraph 129 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

130.     CR-54 is unconstitutionally vague on its face because it employs multiple undefined terms that provide no objective standards for determining what conduct is prohibited.

**RESPONSE TO ALLEGATION NO. 130**:

#10845965v1

The allegations contained in Paragraph 130 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 130 of the Complaint.

131.    CR-54 prohibits recurring use "in a manner that monopolizes all or part of the facility."

**RESPONSE TO ALLEGATION NO. 131**:

With respect to the allegations set forth in Paragraph 131, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

132.    The ordinance does not define "monopolizes."

**RESPONSE TO ALLEGATION NO. 132**:

With respect to the allegations set forth in Paragraph 132 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

133.    No person of ordinary intelligence can determine what constitutes "monopolization" of "all or part of" a facility under CR-54.

**RESPONSE TO ALLEGATION NO. 133**:

Defendants deny the allegations set forth in Paragraph 133 of the Complaint.

134.    The term "monopolize" could mean actual exclusion of others, or it could mean simply using more than one's proportionate share, or it could mean regular use that makes others feel the space is "taken" even if physically available.

**RESPONSE TO ALLEGATION NO. 134**:

Defendants deny the allegations set forth in Paragraph 134 of the Complaint.

135.    Without definition, "monopolize" means whatever enforcement officials subjectively decide it means on any given day.

**RESPONSE TO ALLEGATION NO. 135**:

Defendants deny the allegations set forth in Paragraph 135 of the Complaint.

136.    CR-54 prohibits recurring use that "impedes open access by others."

**RESPONSE TO ALLEGATION NO. 136**:

With respect to the allegations set forth in Paragraph 136, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

137.    The ordinance does not define "impedes," "open access," or how much impediment triggers a violation.

**RESPONSE TO ALLEGATION NO. 137**:

With respect to the allegations set forth in Paragraph 137, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

138.    CR-54 prohibits use "on more than one occasion" but provides no temporal limitation.

**RESPONSE TO ALLEGATION NO. 138**:

#10845965v1

With respect to the allegations set forth in Paragraph 138, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

139.    CR-54's multiple undefined terms compound one another, creating impossible uncertainty about what conduct is prohibited.

**RESPONSE TO ALLEGATION NO. 139:**

Defendants deny the allegations set forth in Paragraph 139 of the Complaint.

140.    A person of ordinary intelligence reading CR-54 cannot determine:

a.    How many people may gather;

b.    How often they may gather;

c.    For how long they may stay;

d.    What percentage of a facility they may use;

e.    Whether the availability of alternative seating matters;

f.    What time period is relevant for determining "recurring" use.

**RESPONSE TO ALLEGATION NO. 140:**

Defendants deny the allegations set forth in Paragraph 140 of the Complaint.

141.    Park users must guess at what is prohibited, and their guesses are subject to the unbounded discretion of enforcement officials.

**RESPONSE TO ALLEGATION NO. 141:**

Defendants deny the allegations set forth in Paragraph 141 of the Complaint.

142.    Families do not know whether their weekly picnic is criminal and may forgo it rather than risk citation.

#10845965v1

**RESPONSE TO ALLEGATION NO. 142**:

Defendants deny the allegations set forth in Paragraph 142 of the Complaint.

143.    Civic groups, religious organizations, and informal associations cannot determine whether their planned activities violate CR-54 and may abandon plans to use public parks rather than risk prosecution.

**RESPONSE TO ALLEGATION NO. 143**:

Defendants deny the allegations set forth in Paragraph 143 of the Complaint.

144.    This deterrent effect on protected speech is precisely what the vagueness doctrine aims to prevent.

**RESPONSE TO ALLEGATION NO. 144**:

The allegations set forth in Paragraph 144 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 144 of the Complaint.

145.    CR-54's vague terms vest enforcement officials with standardless discretion to decide what conduct violates the ordinance.

**RESPONSE TO ALLEGATION NO. 145**:

Defendants deny the allegations set forth in Paragraph 145 of the Complaint.

146.    Officials may enforce CR-54 based on personal preferences, viewpoints, demographic characteristics of park users, or other improper considerations.

**RESPONSE TO ALLEGATION NO. 146**:

Defendants deny the allegations set forth in Paragraph 146 of the Complaint.

147.    Two identical gatherings may be treated differently based solely on the subjective judgments of different officers or the same officer on different days.

#10845965v1

**RESPONSE TO ALLEGATION NO. 147**:

Defendants deny the allegations set forth in Paragraph 147 of the Complaint.

148.    CR-54 is unconstitutionally vague on its face because no application of the ordinance can provide the fair notice and objective standards required by the Constitution.

**RESPONSE TO ALLEGATION NO. 148**:

The allegations set forth in Paragraph 148 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 148 of the Complaint.

149.    The vagueness inheres in CR-54's text and cannot be remedied by clarifying enforcement guidelines or case-by-case adjudication.

**RESPONSE TO ALLEGATION NO. 149**:

Defendants deny the allegations set forth in Paragraph 149 of the Complaint.

150.    By enacting CR-54, Defendants have violated and continue to violate the Due Process Clause of the Fourteenth Amendment and the Free Speech Clause of the First Amendment.

**RESPONSE TO ALLEGATION NO. 150**:

The allegations set forth in Paragraph 150 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 150 of the Complaint.

151.    Defendants' enactment of this unconstitutionally vague ordinance has caused and will continue to cause Plaintiffs and countless others irreparable injury for which there is no adequate remedy at law.

**RESPONSE TO ALLEGATION NO. 151**:

Defendants deny the allegations set forth in Paragraph 151 of the Complaint.

#10845965v1

152.    Pursuant to 42 U.S.C §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

**RESPONSE TO ALLEGATION NO. 152**:

Defendants deny the allegations set forth in Paragraph 152 of the Complaint.

**Response to "Count III"**
**Facial Violation of Plaintiffs' First Amendment**
**Right to Freedom of Speech – Viewpoint Discrimination and Unconstitutional Prior Restraint**
**(U.S. Const. amend. I; 42 U.S.C. 1983)**

153.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 153**:

With respect to the allegations set forth in Paragraph 153 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

154.    Pursuant to 42 U.S.C § 1983, Plaintiffs bring this claim against Defendants for acting under the color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

**RESPONSE TO ALLEGATION NO. 154**:

Defendants deny the allegations set forth in Paragraph 154 of the Complaint.

155.    It is clearly established the government cannot justify allowing all views of an issue except those dealing with the subject matter from a religious standpoint. This reflects the basic principle that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.

**RESPONSE TO ALLEGATION NO. 155**:

#10845965v1

The allegations set forth in Paragraph 155 of the Complaint call for a legal conclusion, which require no response. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

156.    Defendants denied Plaintiffs' right to freedom of speech by discriminating against them based on the content of their message.

**RESPONSE TO ALLEGATION NO. 156**:

Defendants deny the allegations set forth in Paragraph 156 of the Complaint.

157.    Defendants denied Plaintiffs' right to freedom of speech by discriminating against them on the basis of their religious viewpoint.

**RESPONSE TO ALLEGATION NO. 157**:

Defendants deny the allegations set forth in Paragraph 157 of the Complaint.

158.    Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional.

**RESPONSE TO ALLEGATION NO. 158**:

The allegations set forth in Paragraph 158 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

159.    Plaintiffs' ministry activities constitute protected speech under the First Amendment.

#10845965v1

**RESPONSE TO ALLEGATION NO. 159**:

The allegations set forth in Paragraph 159 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

160.    Sharing meals with community members, engaging in prayer and Bible study, delivering sermons, and providing charitable service are all forms of expressive conduct protected by the First Amendment.

**RESPONSE TO ALLEGATION NO. 160**:

The allegations set forth in Paragraph 160 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

161.    These activities communicate messages of faith, charity, social inclusion, and the religious imperative "to serve the least of these."

**RESPONSE TO ALLEGATION NO. 161**:

Defendants are without sufficient knowledge and information to form a belief as to the veracity of the allegations contained in Paragraph 161 of the Complaint and, on that basis, deny the same.

162.    Defendants have enforced CR-54 based on the religious viewpoint and content of Plaintiffs' expressive activities.

#10845965v1

**RESPONSE TO ALLEGATION NO. 162**:

Defendants deny the allegations set forth in Paragraph 162 of the Complaint.

163.    The City's opposition to Plaintiffs' gatherings is driven by the religious nature of the activities and the religious message they convey.

**RESPONSE TO ALLEGATION NO. 163**:

Defendants deny the allegations set forth in Paragraph 163 of the Complaint.

164.    During the September 18, 2025, citation incident, officers explicitly asked Plaintiffs, "How many people are part of your church?"

**RESPONSE TO ALLEGATION NO. 164**:

With respect to the allegations contained in Paragraph 164 of the Complaint, Defendants admit that the responding police officers asked questions to determine the affiliation of the lunch program attendees to determine whether there was recurring group usage of the Park.

165.    This question directly inquired into the religious identity and affiliation of the group, demonstrating that enforcement was based on religious viewpoint rather than neutral park regulations.

**RESPONSE TO ALLEGATION NO. 165**:

Defendants deny the allegations set forth in Paragraph 165 of the Complaint.

166.    Officers requested and recorded which churches the three Plaintiffs represented, making explicit that religious identity was central to the enforcement decision.

**RESPONSE TO ALLEGATION NO. 166**:

Defendants deny the allegations set forth in Paragraph 166 of the Complaint.

167.    Defendants have enforced CR-54 exclusively against Plaintiffs' religious gatherings while permitting numerous comparable secular groups to use the Park without citation

#10845965v1

or interference.

**RESPONSE TO ALLEGATION NO. 167**:

Defendants deny the allegations set forth in Paragraph 167 of the Complaint.

168.    These groups include: Adult special needs daycare groups meeting at the same time as the ministry; groups who have rented pavilions for recurring use; Afghan refugee gatherings; walking clubs; pickleball groups; and the Northglenn Seniors, who, for example, met twice on August 26, 2025, and twice on August 28, 2025, for group fitness classes.

**RESPONSE TO ALLEGATION NO. 168**:

Defendants deny the allegations set forth in Paragraph 168 of the Complaint.

169.    These secular groups create similar or greater impacts on park usage, group congregation, and the City's asserted concerns about mess and security.

**RESPONSE TO ALLEGATION NO. 169**:

With respect to the allegations contained in Paragraph 169 of the Complaint, Defendants admit that the City enacted the Park's rules and regulations, applicable to all groups, to protect and enable the Park to be used and usable by all members of the public.

170.    The City's exclusive enforcement against religious gatherings while permitting comparable secular uses demonstrates that enforcement is driven by the religious viewpoint and message, not by neutral application of park regulations.

**RESPONSE TO ALLEGATION NO. 170**:

Defendants deny the allegations set forth in Paragraph 170 of the Complaint.

171.    If CR-54 enforcement were truly about group size and park monopolization, the religious affiliation of participants would be irrelevant.

**RESPONSE TO ALLEGATION NO. 171**:

#10845965v1

With respect to the allegations set forth in Paragraph 171 of the Complaint, Defendants admit that Plaintiffs' religious affiliation is not relevant to the decisions made related to Plaintiffs' use of the Park. Defendants deny the remaining allegations contained in Paragraph 171 of the Complaint.

172.    Defendants have no sufficient government interest to justify their discriminatory treatment of Plaintiffs.

**RESPONSE TO ALLEGATION NO. 172**:

Defendants deny the allegations set forth in Paragraph 172 of the Complaint.

173.    As applied to Plaintiffs, CR-54 operates as a prior restraint on speech in a traditional public forum.

**RESPONSE TO ALLEGATION NO. 173**:

The allegations contained in Paragraph 173 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants deny the allegations set forth in Paragraph 173 of the Complaint.

174.    CR-54 requires groups of five or more to obtain a permit before engaging in recurring expressive activities in the Park.

**RESPONSE TO ALLEGATION NO. 174**:

With respect to the allegations set forth in Paragraph 174 of the Complaint, Defendants admit that the requirements of the City's regulations are contained within the express provisions of those regulations. To the extent that Plaintiff's description of the terms vary from the regulations, are taken out of context, or are otherwise incomplete, Defendants deny the same.

175.    A licensing or permit system is a classic form of prior restraint on speech.

**RESPONSE TO ALLEGATION NO. 175**:

#10845965v1

The allegations set forth in Paragraph 175 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

176.    CR-54 lacks narrow, objective, and definite standards to guide the licensing authority.

**RESPONSE TO ALLEGATION NO. 176**:

Defendants deny the allegations set forth in Paragraph 176 of the Complaint.

177.    The undefined terms "monopolizes," "impedes," "open access," and "facility" vest officials with unbounded discretion to grant or deny permits based on subjective judgments.

**RESPONSE TO ALLEGATION NO. 177**:

Defendants deny the allegations set forth in Paragraph 177 of the Complaint.

178.    Officers' statements on September 11, 2025, that they "did not know how to code it" or "how to cite this thing" demonstrate the absence of clear standards.

**RESPONSE TO ALLEGATION NO. 178**:

Defendants deny the allegations set forth in Paragraph 178 of the Complaint.

179.    Even assuming the City has a compelling interest in ensuring park access and preventing monopolization, enforcing CR-54 against Plaintiffs' gatherings is not narrowly tailored to achieve this interest.

**RESPONSE TO ALLEGATION NO. 179**:

Defendants deny the allegations set forth in Paragraph 179 of the Complaint.

180.    Less restrictive alternatives exist, including capacity-based restrictions, time limits,

#10845965v1

reservation systems, or complaint-driven enforcement.

**RESPONSE TO ALLEGATION NO. 180**:

Defendants deny the allegations set forth in Paragraph 180 of the Complaint.

181.    The City's four-year tolerance of Plaintiffs' gatherings demonstrates that enforcement is not necessary to achieve any compelling interest.

**RESPONSE TO ALLEGATION NO. 181**:

Defendants deny the allegations set forth in Paragraph 181 of the Complaint.

182.    Pursuant to 42 U.S.C §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

**RESPONSE TO ALLEGATION NO. 182**:

Defendants deny the allegations set forth in Paragraph 182 of the Complaint.

**Response to "Count IV"**
**Violation of Plaintiffs' First Amendment**
**Right to Free Exercise of Religion**
**(U.S. Const. amend. I; 42 U.S.C. § 1983)**

183.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 183**:

With respect to the allegations set forth in Paragraph 183 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

184.    Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free exercise of religion as guaranteed by the U.S. Constitution.

**RESPONSE TO ALLEGATION NO. 184**:

#10845965v1

Defendants deny the allegations set forth in Paragraph 184 of the Complaint.

185.     The First Amendment prohibits government action that is neither neutral nor generally applicable toward religion.

**RESPONSE TO ALLEGATION NO. 185**:

The allegations set forth in Paragraph 185 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

186.     Plaintiffs sincerely believe that feeding, serving, and ministering to the local community, including the homeless community, is a religious exercise central to their faith.

**RESPONSE TO ALLEGATION NO. 186**:

Defendants are without sufficient knowledge and information to form a belief as to the veracity of the allegations set forth in Paragraph 186 of the Complaint and, on that basis, deny the same.

187.     Sharing meals, prayer, Bible study, sermons, and Christian fellowship with homeless individuals are religious practices compelled by Plaintiffs' faith.

**RESPONSE TO ALLEGATION NO. 187**:

Defendants are without sufficient knowledge and information to form a belief as to the veracity of the allegations set forth in Paragraph 187 of the Complaint and, on that basis, deny the same.

188.     Defendants have engaged in express religious discrimination.

**RESPONSE TO ALLEGATION NO. 188**:

#10845965v1

Defendants deny the allegations set forth in Paragraph 188 of the Complaint.

189.     Defendants' actions and CR-54 substantially burden Plaintiffs' sincerely held religious beliefs and expression.

**RESPONSE TO ALLEGATION NO. 189**:

Defendants are without sufficient knowledge and information to form a belief as to the veracity of the allegations regarding Plaintiffs' sincerely held religious beliefs set forth in Paragraph 189 of the Complaint and, on that basis, deny the same. Defendants deny the remaining allegations set forth in Paragraph 189 of the Complaint.

190.     Defendants' actions and CR-54 are neither neutral nor generally applicable in that (1) CR-54 was passed and enforced by Defendants to regulate and/or prohibit Plaintiffs' conduct because it is undertaken for religious reasons, and (2) numerous other groups have been observed using park facilities without citation or interference.

**RESPONSE TO ALLEGATION NO. 190**:

Defendants deny the allegations set forth in Paragraph 190 of the Complaint.

191.     The historical background and specific sequence of events leading to CR-54's enactment demonstrate religious targeting and a law that is not neutral.

**RESPONSE TO ALLEGATION NO. 191**:

Defendants deny the allegations set forth in Paragraph 191 of the Complaint.

192.     In summer 2024, after four years of peaceful operation, the Chief of Police informed individuals that he had been tasked with shutting down the weekly gatherings.

**RESPONSE TO ALLEGATION NO. 192**:

Defendants deny the allegations set forth in Paragraph 192 of the Complaint.

193.     This statement reveals that City leadership identified Plaintiffs' gatherings as a

#10845965v1

target for suppression before CR-54 was enacted.

**RESPONSE TO ALLEGATION NO. 193**:

Defendants deny the allegations set forth in Paragraph 193 of the Complaint.

194.    On September 24, 2024, the City held a meeting exclusively with pastors and church representatives, telling them their gatherings violated city policy.

**RESPONSE TO ALLEGATION NO. 194**:

With respect to the allegations set forth in Paragraph 194 of the Complaint, Defendants admit that City representatives met with members of various churches who participated in a lunch program hosted in the Park, discussing, in part, that the lunch gatherings violated the Park's rules and regulations.

195.    No other groups using the Park were called in for similar discussions, demonstrating that the City singled out religious actors.

**RESPONSE TO ALLEGATION NO. 195**:

With respect to the allegations contained in Paragraph 195 of the Complaint, Defendants admit that City representatives did not meet with other groups, as these groups voluntarily complied when presented with the Park rules. Defendants deny the remaining allegations contained in Paragraph 195 of the Complaint.

196.    During the September 18, 2025, citations, officers explicitly asked Plaintiffs, "How many people are part of your church?" and recorded which churches they represented.

**RESPONSE TO ALLEGATION NO. 196**:

With respect to the allegations contained in Paragraph 196 of the Complaint, Defendants admit that the responding police officers asked questions to determine the affiliation of the lunch program attendees to determine whether there was recurring group usage of the Park.

#10845965v1

197.    This inquiry into religious affiliation demonstrates that enforcement decisions were tied to religious identity, not neutral application of park regulations.

**RESPONSE TO ALLEGATION NO. 197**:

Defendants deny the allegations set forth in Paragraph 197 of the Complaint.

198.    If CR-54 were truly about group size and monopolization, the religious affiliation of participants would be irrelevant.

**RESPONSE TO ALLEGATION NO. 198**:

With respect to the allegations set forth in Paragraph 198 of the Complaint, Defendants admit that Plaintiffs' religious affiliation is not relevant to the decisions made related to Plaintiffs' use of the Park. Defendants deny the remaining allegations contained in Paragraph 198 of the Complaint.

199.    In addition, CR-54 lacks general applicability both in its structure and in its application.

**RESPONSE TO ALLEGATION NO. 199**:

Defendants deny the allegations set forth in Paragraph 199 of the Complaint.

200.    Numerous secular groups engage in recurring use of the Park with five or more people, yet have not been cited or subjected to enforcement.

**RESPONSE TO ALLEGATION NO. 200**:

Defendants deny the allegations set forth in Paragraph 200 of the Complaint.

201.    Secular groups create the same alleged impacts on park usage—group congregation, potential for mess, security concerns—that the City claims justify CR-54's enforcement against Plaintiffs.

**RESPONSE TO ALLEGATION NO. 201**:

#10845965v1

With respect to the allegations contained in Paragraph 201 of the Complaint, Defendants admit that secular and non-secular groups create the same impacts on park usage—group congregation, potential for mess, security concerns, necessitating the creation of CR-54.

202.    Many of these groups likely exceed Plaintiffs' group size and duration of park use.

**RESPONSE TO ALLEGATION NO. 202**:

Defendants are without sufficient knowledge to form a belief as to the veracity of the allegations contained in Paragraph 202 of the Complaint and, on that basis, deny the same.

203.    These secular activities undermine the government's asserted interests.

**RESPONSE TO ALLEGATION NO. 203**:

With respect to the allegations contained in Paragraph 203 of the Complaint, Defendants admit that secular and non-secular groups create the same impacts on park usage—group congregation, potential for mess, security concerns, necessitating the creation of CR-54.

204.    Because CR-54 is neither neutral nor generally applicable as applied to Plaintiffs, it must satisfy strict scrutiny.

**RESPONSE TO ALLEGATION NO. 204**:

The allegations contained in Paragraph 204 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same. Defendants deny the remaining allegations contained in Paragraph 204 of the Complaint.

205.    Under strict scrutiny, Defendants must demonstrate that enforcing CR-54 against Plaintiffs is narrowly tailored to advance a compelling governmental interest.

#10845965v1

**RESPONSE TO ALLEGATION NO. 205**:

The allegations contained in Paragraph 205 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

206.    Defendants had no sufficient government interest in burdening Plaintiffs' religious beliefs and expression.

**RESPONSE TO ALLEGATION NO. 206**:

Defendants deny the allegations set forth in Paragraph 206 of the Complaint.

207.    Defendants' actions and CR-54 are not narrowly tailored to advance any compelling government interest.

**RESPONSE TO ALLEGATION NO. 207**:

The allegations contained in Paragraph 207 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the First Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same. Defendants deny the remaining allegations set forth in Paragraph 207 of the Complaint.

208.    The five-person threshold sweeps in vast amounts of ordinary family, civic, and religious activity that poses no threat to park access in a park designed for 600+ people.

**RESPONSE TO ALLEGATION NO. 208**:

#10845965v1

With respect to the allegations set forth in Paragraph 208 of the Complaint, Defendants admit that the five-person threshold may encompass a number of groups and activities. Defendants deny the remaining allegations set forth in Paragraph 208 of the Complaint.

209. The prohibition on "recurrence" is overbroad, banning small, harmless recurring gatherings alongside any gatherings that might theoretically monopolize facilities.

**RESPONSE TO ALLEGATION NO. 209**:

Defendants deny the remaining allegations set forth in Paragraph 209 of the Complaint.

210. Plaintiffs' gatherings of 20-40 people in a park with multiple pavilions and capacity for hundreds cannot credibly monopolize facilities or impede access.

**RESPONSE TO ALLEGATION NO. 210**:

Defendants deny the allegations set forth in Paragraph 210 of the Complaint.

211. CR-54, as applied against Plaintiffs, constitutes a violation of Plaintiffs' First Amendment right to freedom of religion as incorporated and applied to the states under the Fourteenth Amendment.

**RESPONSE TO ALLEGATION NO. 211**:

Defendants deny the allegations set forth in Paragraph 211 of the Complaint.

212. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, injunctive relief, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

**RESPONSE TO ALLEGATION NO. 212**:

Defendants deny the allegations set forth in Paragraph 212 of the Complaint.

**Response to "Count V"**
**Violation of Plaintiffs' Fourteenth Amendment**
**Right to Equal Protection**
**(U.S. Const. amend. XIV; 42 U.S.C § 1983)**

#10845965v1

213.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 213**:

With respect to the allegations set forth in Paragraph 213 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

214.    The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. Put simply, the State must treat all similarly situated persons alike.

**RESPONSE TO ALLEGATION NO. 214**:

The allegations set forth in Paragraph 214 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Fourteenth Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

215.    The Equal Protection Clause protects religious individuals against unequal treatment.

**RESPONSE TO ALLEGATION NO. 215**:

The allegations set forth in Paragraph 215 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Fourteenth Amendment to the U.S. Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

216.    Defendants' actions and CR-54's application violate Plaintiffs' right to Equal

Protection as similarly situated groups—groups of five or more people meeting on a recurrent basis in the Park—are treated differently based on their religious identity and the demographic they serve.

**RESPONSE TO ALLEGATION NO. 216**:

The allegations set forth in Paragraph 216 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 216 of the Complaint.

217.    Plaintiffs and other recurring groups using E.B. Rains, Jr. Memorial Park are similarly situated in all material respects.

**RESPONSE TO ALLEGATION NO. 217**:

The allegations set forth in Paragraph 217 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 217 of the Complaint.

218.    All such groups consist of five or more people meeting on a recurring basis in the Park.

**RESPONSE TO ALLEGATION NO. 218**:

The allegations set forth in Paragraph 218 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 218 of the Complaint.

219.    All such groups occupy park facilities, including pavilions, picnic tables, benches, and open spaces.

**RESPONSE TO ALLEGATION NO. 219**:

#10845965v1

The allegations set forth in Paragraph 219 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 219 of the Complaint.

220.    Despite being similarly situated, Defendants have treated Plaintiffs fundamentally differently from other park users.

**RESPONSE TO ALLEGATION NO. 220**:

Defendants deny the allegations set forth in Paragraph 220 of the Complaint.

221.    Plaintiffs have been:

a.    Subjected to special meetings with city officials;

b.    Warned by police officers;

c.    Cited under CR-54 on September 18, 2025;

d.    Required to disperse and prevented from completing their activities on September 23, 2025;

e.    Required to leave food behind that was accordingly destroyed or lost;

f.    Subjected to ongoing monitoring and observation by city officials.

**RESPONSE TO ALLEGATION NO. 221**:

With respect to the allegations set forth in Paragraph 221 of the Complaint, Defendants admit that City officials met with Plaintiffs, cited Plaintiffs on or about September 18, 2025, and required Plaintiffs to disperse on September 23, 2025. Defendants deny the remaining allegations set forth in Paragraph 221 of the Complaint.

222.    Defendants' unequal treatment and religious animus are further demonstrated by Defendants' conduct towards Plaintiffs' leading up to the passage of CR-54.

**RESPONSE TO ALLEGATION NO. 222**:

#10845965v1

Defendants deny the allegations set forth in Paragraph 222 of the Complaint.

223.    Defendants had no sufficient government interest to justify the discriminatory exclusion of Plaintiffs' ministry.

**RESPONSE TO ALLEGATION NO. 223**:

Defendants deny the allegations set forth in Paragraph 223 of the Complaint.

224.    Defendants' actions and CR-54 therefore violate the Equal Protection Clause of the Fourteenth Amendment.

**RESPONSE TO ALLEGATION NO. 224**:

Defendants deny the allegations set forth in Paragraph 224 of the Complaint.

225.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, injunctive relief, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

**RESPONSE TO ALLEGATION NO. 225**:

Defendants deny the allegations set forth in Paragraph 225 of the Complaint.

**Response to "Count VI"**
**Violation of Plaintiffs' Colorado Right to Free Speech**
**(Colo Const. art. II, sec. 10; 42 U.S.C § 1983)**

226.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 226**:

With respect to the allegations set forth in Paragraph 226 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

227.    The Colorado Constitution provides greater protection for free speech than the First Amendment.

#10845965v1

**RESPONSE TO ALLEGATION NO. 227**:

The allegations set forth in Paragraph 227 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Colorado Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

228.    The Park is a traditional public forum under Colorado law.

**RESPONSE TO ALLEGATION NO. 228**:

The allegations set forth in Paragraph 228 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Colorado Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

229.    For the reasons stated in Counts I and II, CR-54 is facially invalid under Article II, Section 10 of the Colorado Constitution.

**RESPONSE TO ALLEGATION NO. 229**:

The allegations set forth in Paragraph 229 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 229 of the Complaint.

230.    CR-54 is overbroad, prohibiting vast amounts of protected speech, assembly, and associational activity in traditional public forums.

**RESPONSE TO ALLEGATION NO. 230**:

Defendants deny the allegations set forth in Paragraph 230 of the Complaint.

#10845965v1

231.    The five-person threshold criminalizes ordinary family gatherings, civic associations, religious groups, and informal social groups engaging in expressive activity.

**RESPONSE TO ALLEGATION NO. 231**:

Defendants deny the allegations set forth in Paragraph 231 of the Complaint.

232.    The breadth of CR-54's prohibition on speech and assembly in public parks far exceeds any legitimate governmental interest in park management.

**RESPONSE TO ALLEGATION NO. 232**:

Defendants deny the allegations set forth in Paragraph 232 of the Complaint.

233.    CR-54 is unconstitutionally vague under Colorado law, failing to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

**RESPONSE TO ALLEGATION NO. 233**:

The allegations set forth in Paragraph 233 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 233 of the Complaint.

234.    The undefined terms "monopolizes," "impedes," "open access," and "facility" provide no objective guidance to park users or enforcement officials.

**RESPONSE TO ALLEGATION NO. 234**:

Defendants deny the allegations set forth in Paragraph 234 of the Complaint.

235.    This vagueness chills protected speech and authorizes arbitrary enforcement, violating fundamental principles of due process and free speech under Colorado law.

**RESPONSE TO ALLEGATION NO. 235**:

The allegations set forth in Paragraph 235 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 235 of the Complaint.

236.    CR-54 does not meet the time, place, and manner test required by Colorado law.

**RESPONSE TO ALLEGATION NO. 236**:

The allegations set forth in Paragraph 236 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 236 of the Complaint.

237.    CR-54 is not narrowly tailored to serve any significant governmental interest.

**RESPONSE TO ALLEGATION NO. 237**:

Defendants deny the allegations set forth in Paragraph 237 of the Complaint.

238.    The five-person threshold and prohibition on recurring use sweep far more broadly than necessary to address any legitimate concern about park access or monopolization.

**RESPONSE TO ALLEGATION NO. 238**:

Defendants deny the allegations set forth in Paragraph 238 of the Complaint.

239.    For the reasons stated in Count III, CR-54 as applied to Plaintiffs violates Article II, Section 10 of the Colorado Constitution.

**RESPONSE TO ALLEGATION NO. 239**:

The allegations set forth in Paragraph 239 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 239 of the Complaint.

240.    Defendants have enforced CR-54 through viewpoint discrimination, denying Plaintiffs access to a traditional public forum based on the religious content and viewpoint of their

#10845965v1

expressive activities.

**RESPONSE TO ALLEGATION NO. 240**:

Defendants deny the allegations set forth in Paragraph 240 of the Complaint.

241.    Officers explicitly inquired into Plaintiffs' religious affiliation, asking "How many people are part of your church?"—demonstrating that enforcement was based on religious viewpoint.

**RESPONSE TO ALLEGATION NO. 241**:

Defendants deny the allegations contained in Paragraph 241 of the Complaint.

242.    The City's stated concerns about gatherings acting as a "magnet" for homeless individuals reveal disapproval of the message of social inclusion and charitable service that Plaintiffs express.

**RESPONSE TO ALLEGATION NO. 242**:

Defendants deny the allegations set forth in Paragraph 242 of the Complaint.

243.    Defendants have enforced CR-54 exclusively against Plaintiffs' religious gatherings while permitting numerous comparable secular groups to use the Park freely.

**RESPONSE TO ALLEGATION NO. 243**:

Defendants deny the allegations set forth in Paragraph 243 of the Complaint.

244.    By enacting and enforcing CR-54 against Plaintiffs, Defendants have violated and continue to violate Article II, Section 10 of the Colorado Constitution, both facially and as applied.

**RESPONSE TO ALLEGATION NO. 244**:

The allegations set forth in Paragraph 244 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 244 of the Complaint.

#10845965v1

245.    Defendants' actions have caused and will continue to cause Plaintiffs irreparable injury for which there is no adequate remedy at law.

**RESPONSE TO ALLEGATION NO. 245**:

Defendants deny the allegations set forth in Paragraph 245 of the Complaint.

246.    Plaintiffs are entitled to declaratory relief that CR-54 violates Article II, Section 10, injunctive relief prohibiting its enforcement, and damages.

**RESPONSE TO ALLEGATION NO. 246**:

Defendants deny the allegations set forth in Paragraph 246 of the Complaint.

**Response to "Count VI"**
**Violation of Plaintiffs' Colorado Right to Free Exercise**
**(Colo Const. art. II, sec. 4; 42 U.S.C § 1983)**

247.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 247**:

With respect to the allegations set forth in Paragraph 247 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

248.    Article II, Section 4 of the Colorado Constitution protects free exercise.

**RESPONSE TO ALLEGATION NO. 248**:

The allegations set forth in Paragraph 248 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Colorado Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

249.    Plaintiffs' ministry activities constitute sincere religious exercise protected by

#10845965v1

Article II, Section 4.

**RESPONSE TO ALLEGATION NO. 249**:

The allegations set forth in Paragraph 249 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge and information to form a belief as to the veracity of the allegations set forth in Paragraph 249 of the Complaint and, on that basis, deny the same.

250.    Plaintiffs sincerely believe that feeding and ministering to homeless individuals is a religious exercise central to their Christian faith.

**RESPONSE TO ALLEGATION NO. 250**:

Defendants are without sufficient knowledge and information to form a belief as to the veracity of the allegations set forth in Paragraph 250 of the Complaint and, on that basis, deny the same.

251.    CR-54 directly burdens Plaintiffs' religious exercise by criminalizing their recurring ministry gatherings.

**RESPONSE TO ALLEGATION NO. 251**:

Defendants deny the allegations set forth in Paragraph 251 of the Complaint.

252.    Plaintiffs cannot fulfill their religious obligation to serve the homeless community without gathering regularly to share meals, prayer, and fellowship.

**RESPONSE TO ALLEGATION NO. 252**:

Defendants deny the allegations set forth in Paragraph 252 of the Complaint.

253.    For the reasons stated in Count IV, CR-54, as enacted and enforced against Plaintiffs, violates the guarantee of free exercise in the Colorado Constitution.

**RESPONSE TO ALLEGATION NO. 253**:

#10845965v1

The allegations set forth in Paragraph 253 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 253 of the Complaint.

254.    Plaintiffs are entitled to declaratory relief that CR-54 violates Article II, Section 4, injunctive relief prohibiting its enforcement, and damages.

**RESPONSE TO ALLEGATION NO. 254**:

Defendants deny the allegations set forth in Paragraph 254 of the Complaint.

**Response to "Count VII"**
**Violation of Plaintiffs' Colorado Right to Equal Protection**
**(Colo. Const. art. II, sec. 25; 42 U.S.C. § 1983)**

255.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as fully set forth herein.

**RESPONSE TO ALLEGATION NO. 255**:

With respect to the allegations set forth in Paragraph 255 of the Complaint, Defendants incorporate their responses set forth above as if fully set forth herein.

256.    The right to equal protection of the law is guaranteed to Colorado citizens by means of the due process clause of Article II, Section 25 of the Colorado Constitution.

**RESPONSE TO ALLEGATION NO. 256**:

The allegations set forth in Paragraph 256 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Colorado Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

257.    The Colorado Constitution protects religious individuals against unequal treatment.

#10845965v1

**RESPONSE TO ALLEGATION NO. 257**:

The allegations set forth in Paragraph 257 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Colorado Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

258.    The State must treat all similarly situated persons alike.

**RESPONSE TO ALLEGATION NO. 258**:

The allegations set forth in Paragraph 258 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants assert that the provisions of the Colorado Constitution and its interpreting case law speak for themselves. To the extent that Plaintiffs' description of the requirements of the law vary from the law, is taken out of context, or is incomplete, Defendants deny the same.

259.    Defendants' actions and CR-54's application violate Plaintiffs' Colorado right to equal protection as similarly situated groups—groups of five or more people meeting on a recurrent basis in the Park—are treated differently based on their religious identity and the demographic they serve.

**RESPONSE TO ALLEGATION NO. 259**:

The allegations set forth in Paragraph 259 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 259 of the Complaint.

260.    Plaintiffs and other recurring groups using E.B. Rains, Jr. Memorial Park are similarly situated in all material respects.

#10845965v1

**RESPONSE TO ALLEGATION NO. 260**:

The allegations set forth in Paragraph 260 of the Complaint call for a legal conclusion, to which no response is required, Defendants deny the allegations set forth in Paragraph 260 of the Complaint.

261.    All such groups consist of five or more people meeting on a recurring basis in the Park.

**RESPONSE TO ALLEGATION NO. 261**:

The allegations set forth in Paragraph 261 of the Complaint call for a legal conclusion, to which no response is required, Defendants deny the allegations set forth in Paragraph 261 of the Complaint.

262.    All such groups occupy park facilities, including pavilions, picnic tables, benches, and open spaces.

**RESPONSE TO ALLEGATION NO. 262**:

The allegations set forth in Paragraph 262 of the Complaint call for a legal conclusion, to which no response is required, Defendants deny the allegations set forth in Paragraph 262 of the Complaint.

263.    Despite being similarly situated, Defendants have treated Plaintiffs fundamentally differently from other park users.

**RESPONSE TO ALLEGATION NO. 263**:

The allegations set forth in Paragraph 263 of the Complaint call for a legal conclusion, to which no response is required, Defendants deny the allegations set forth in Paragraph 263 of the Complaint.

264.    Plaintiffs have been:

a.    Subjected to special meetings with city officials;

b.      Warned by police officers;

c.      Cited under CR-54 on September 18, 2025;

d.      Required to disperse and prevented from completing their activities on September 23, 2025;

e.      Subjected to ongoing monitoring and observation by city officials.

**RESPONSE TO ALLEGATION NO. 264**:

With respect to the allegations set forth in Paragraph 264 of the Complaint, Defendants admit that City officials met with Plaintiffs, cited Plaintiffs on or about September 18, 2025, and required Plaintiffs to disperse on September 23, 2025. Defendants deny the remaining allegations set forth in Paragraph 264 of the Complaint.

265.    Defendants' unequal treatment and religious animus are further demonstrated by Defendants' conduct towards Plaintiffs' leading up to the passage of CR-54.

**RESPONSE TO ALLEGATION NO. 265**:

Defendants deny the allegations set forth in Paragraph 265 of the Complaint.

266.    Defendants had no sufficient government interest to justify the discriminatory exclusion of Plaintiffs.

**RESPONSE TO ALLEGATION NO. 266**:

Defendants deny the allegations set forth in Paragraph 266 of the Complaint.

267.    Therefore, Defendants' actions and CR-54 violate Plaintiffs' right to equal protection of the law under the Colorado Constitution.

**RESPONSE TO ALLEGATION NO. 267**:

#10845965v1

The allegations set forth in Paragraph 267 of the Complaint call for a legal conclusion, to which no response is required, Defendants deny the allegations set forth in Paragraph 267 of the Complaint.

268.    Plaintiffs are entitled to declaratory relief that Defendants' actions and CR-54 violate Article II, Section 25, injunctive relief prohibiting CR-54's enforcement, and damages.

**RESPONSE TO ALLEGATION NO. 268**:

Defendants deny the allegations set forth in Paragraph 268 of the Complaint.

## RESPONSE TO PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of their requested relief, including their relief for injunctive relief, compensatory or nominal damages, a declaratory judgment, or their request for attorneys' fees, costs, and other costs and disbursements according to 42 U.S.C. 1988.

## GENERAL DENIAL

1.    Defendants deny all allegations not specifically admitted to herein.

2.    Defendants deny all allegations of tortious or wrongful acts, omissions, or other conduct that violate any applicable law, including the First and Fourteenth Amendments of the United States Constitution and the Colorado Constitution.

## DEFENSES AND AFFIRMATIVE DEFENSES

The following affirmative defenses are asserted upon information and belief. Defendants are not assuming the burden of proving any fact, issue, or element of a cause of action where such a burden properly belongs to Plaintiffs, and nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject matter is relevant to Plaintiffs' allegations. Defendants reserve the right to assert additional affirmative defenses should subsequent discovery or disclosure so require.

#10845965v1

1.      Plaintiffs' Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2.      Plaintiffs' Complaint is moot.

3.      The City of Northglenn's legislative decisions and other actions are protected exercise of the City's police powers in protecting the safety and welfare of the public.

4.      The Resolution in dispute is not facially unconstitutional.

4.      Plaintiffs have failed to mitigate their alleged damages, if any.

5.      Defendants acted, at all times, in good faith.

6.      Any injuries or damages Plaintiffs suffered were due to their own acts or omissions.

7.      Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' lack of damages.

8.      Defendants  reserve the right to assert further affirmative defenses as they become evident through discovery and investigation

WHEREFORE, Defendants respectfully request that this Court enter one or more judgments and/or orders in its favor:

a.      Dismissing Plaintiffs' Complaint with prejudice;

b.      Awarding Defendants their reasonable attorney's fees, costs and expenses incurred in defending against this action; and

c.      Granting to Defendants such other and further relief as is just, warranted and reasonable under the circumstances or as permitted by applicable law.

**DEFENDANTS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

#10845965v1

Respectfully submitted this 19th day of January, 2026.

> s/Meredith L. McDonald
> Meredith L. McDonald, Esq.
> Brian R. DeMocker, Esq.
> O'HAGAN MEYER, PLLC
> 1331 17th Street, Suite 350
> Denver, CO  80202-5862
> 303-652-5863
> mmcdonald@ohaganmeyer.com
> bdemocker@ohaganmeyer.com
> **Attorneys for Defendants**

#10845965v1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS' ANSWER, DEFENSES AND AFFIRMATIVE DEFENSES, AND JURY DEMAND TO PLAINTIFFS' COMPLAINT** was filed with the Court and served to the following via CM/ECF, the Federal Courts E-filing System, this 19th day of January, 2026 as follows:

***Plaintiffs' Counsel:***
Nathan Moelker, Esq.
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue NE
Washington, D.C. 20002
nmoelker@aclj.org

Geoffrey R. Surtees, Esq.
AMERICAN CENTER FOR LAW & JUSTICE
P.O. Box 60
New Hope, KY 40052
gsurtees@aclj.org

Garrett A. Taylor, Esq.
AMERICAN CENTER FOR LAW & JUSTICE
625 Bakers Bridge Avenue
Franklin, TN 37067
gtaylor@aclj.org

*s/ Meredith L. McDonald*
Meredith L. McDonald

#10845965v1